UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIE BUCKLEY, RACHEL ROSENFELD, KIMBERLY MYCK-RAWSON, AND JITKA PARMENT<br>Individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>TJX COMPANIES, INC.,<br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____
Jury Trial Demanded

## Complaint

Plaintiffs Julie Buckley, Rachel Rosenfeld, Kimberly Myck-Rawson, and Jitka

Parment (collectively "Plaintiffs"), on behalf of themselves and all others similarly

situated, allege for their complaint as follows.

## Introduction

1.     Defendant TJX Companies, Inc. ("Defendant" or "TJX") operates a

number of retail stores throughout the United States and overseas, including T.J. Maxx,

Marshalls, HomeGoods, Bob's Stores, and A.J. Wright stores in the U.S. and Puerto

Rico; Winners and HomeSense stores in Canada; and T.K. Maxx stores in the U.K. and

Ireland.

2.     Customers (including Plaintiffs) pay for merchandise using credit cards,

debit cards, or checks, and sometimes provide other personal information to TJX such as

driver's license numbers (which may correspond to social security numbers).  TJX takes

on the responsibility of properly securing its customers' financial and personal

information, and customers (including Plaintiffs) trust that TJX will fulfill this responsibility. Without this trust, they would not do business with TJX's stores.

3.       Instead of properly securing its customers' confidential personal and financial information, TJX left this information vulnerable to theft over its computer networks. As a result, the financial and personal information of hundreds of thousands and perhaps millions of customers (including Plaintiffs) was stolen by an unknown person or persons.

4.       Rather than immediately notify customers once it discovered the problem, TJX chose to wait until after the busy Christmas shopping season to announce the theft, further imperiling the financial security of its customers.

5.       Customers (including Plaintiffs) have been greatly inconvenienced. In some cases, their credit and debit cards have been cancelled preemptively by their financial institutions (leaving them with limited access to cash or credit). In other cases, they have noticed fraudulent charges on their cards and have been forced to contest these charges with their financial institutions. In many instances, TJX has been unhelpful in assisting customers trying to determine what has happened to their financial accounts, and has failed to take responsibility for the problems that it has caused.

6.       Of more concern than the immediate stress and inconvenience caused by compromised debit and credit card numbers is the persistent fear of identity theft. Even after publicizing the theft of information, TJX has refused to provide identity theft protection monitoring services for its customers, who are now at increased risk of identity theft.

### Jurisdiction and Venue

7.     This Court has jurisdiction to hear this case under the authority of 28 U.S.C. § 1332(d).  The amount in controversy exceeds $5,000,000.  Plaintiffs Buckley, Myck-Rawson, and Parment are each citizens of different states from Defendant.

8.     Venue is appropriate under the authority of 28 U.S.C. § 1391(a). Defendant resides in this District, and the challenged actions of Defendant took place in this District.

### Parties

9.     Plaintiff Julie Buckley is a resident of Ann Arbor, Michigan.  Her debit card account information was stolen from TJX.  She suffered damage as a result.

10.     Plaintiff Kimberly Myck-Rawson is a resident of Redmond, Oregon.  Her debit card account information was stolen from TJX.  She also believes that her credit card account information may have been stolen from TJX.  She suffered damage as a result.

11.     Plaintiff Rachel Rosenfeld is a resident of Fitchburg, Massachusetts.  Her debit card account information was stolen from TJX.  She suffered damage as a result.

12.     Plaintiff Jitka Parment is a resident of Camarillo, California.  Her credit card and debit card account information was stolen from TJX.  She suffered damage as a result.

13.     Defendant TJX is a Delaware Corporation headquartered in Massachusetts at 770 Cochituate Road, Framingham, MA 01701.  TJX is an off-price apparel and home fashions retailer with stores in the U.S. and overseas.

## Factual Allegations

14.     On January 17, 2007, Defendant announced publicly for the first time that it had discovered in mid-December that the personal and financial information of many of its customers had been stolen.  Data was stolen from the network that handles credit card, debit card, check, and merchandise return transactions for customers of T.J. Maxx, Marshalls, HomeGoods, and A.J. Wright stores in the U.S. and Puerto Rico; Winners and HomeSense stores in Canada; and possibly T.K. Maxx stores in the U.K. and Ireland as well as Bob's Stores in the U.S.

15.     The intrusion was discovered in mid-December, but "TJX maintained the confidentiality of this intrusion [for approximately one month] as requested by law enforcement."

16.     TJX stated that it was still unsure of the scope of the theft, but that it at least involved data from transactions in 2003 as well as from mid-May through December of 2006.  In addition to credit and debit card information, some driver's license information (which may contain social security numbers) was also stolen.

17.     TJX asserted that that it alerted law enforcement officials immediately upon discovery of the intrusion, was working with the major credit card companies to resolve any problems, and had taken measures to prevent further intrusions.

18.     TJX provided toll free contact numbers for customers and stated that it would provide more information on its Web site.  It advised customers to check their accounts for unauthorized purchases.

19.     TJX later stated on its Web site that it believes that the intrusion began in May 2006 – approximately seven months before it was discovered.

20.     TJX later stated on its Web site that it generally believes (but is not certain) that most (but not all) of the information stolen was credit and debit card numbers and expiration dates – and not names, addresses, or PIN numbers. This, according to TJX, means that there is little risk of identity theft. However, TJX's Web site is very clear that TJX has not yet completed its investigation. TJX acknowledges that some driver's license information (which may contain social security numbers), as well as names and addresses, were stolen.

21.     Numerous customers have requested that TJX provide identity theft monitoring services to protect them and to reduce their stress and fear of identity theft. Other companies have done this when their computer systems have been compromised, but TJX has refused to do so. According to its Web site, "Based on the type of data involved in the breach of our systems, we do not believe that such monitoring will be meaningful to customers. In other words, credit monitoring does not detect fraudulent charges on your credit and debit card accounts."

22.     According to a New York Times Article on January 19, 2007, the potential scope of the theft is vast: "Tens of millions of credit and debit cards might have been compromised by a computer security breach at the retailer that operates T. J. Maxx and Marshall's [sic] in what could emerge as the country's biggest case of stolen consumer data."

23.     An article in the Wall Street Journal on January 25, 2007 reported that TJX-related fraudulent purchases have arisen "in such faraway places as Hong Kong and Sweden. . . . Avivah Litan, a Gartner Inc. security analyst, said the scope of the fraudulent activity is 'confirmation that it's a well-organized, global ring' behind it."

24.     There are a number of industry regulations set forth by the major credit card companies, banks, and processing companies that require TJX to take specific measures to ensure the security of customer financial data.  Upon information and belief, TJX is bound by contract to follow many of these regulations. According to a Wall Street Journal article on January 19, 2007, "People familiar with the situation have said that TJX doesn't comply with those requirements."

25.     Plaintiff Buckley has been a regular customer of Defendant's stores for many years, and has used both her debit card and her driver's license when transacting business with Defendant.

26.     On January 18, 2007, she was informed that her debit card information had been stolen from Defendant and that her credit union had preemptively canceled her card, leaving her temporarily without a debit card.

27.     Plaintiff Buckley contacted Defendant over the telephone.  Defendant's employees refused to provide additional information or take responsibility for the situation or to provide any assistance other than to suggest that Plaintiff Buckley monitor her accounts herself for identity theft.  Defendant's employees refused Plaintiff Buckley's request that Defendant provide her with an identity theft monitoring service.  Plaintiff Buckley has been unable to determine whether her driver's license information was stolen from Defendant's computers.

28.     Plaintiff Myck-Rawson shopped at Defendant's T.J. Maxx store in Bend, Oregon on several occasions in the latter part of 2006.  She has used her Visa debit card and her Visa credit card when shopping at this store.

29.     Plaintiff Myck-Rawson's husband was contacted by the couple's credit union on January 19, 2007 and informed that a thief had attempted to use her debit card and that the credit union had canceled her card immediately.

30.     Plaintiff Myck-Rawson contacted her credit union and was told that a local merchant's computer system had been compromised and her financial information had been stolen.  However, the credit union stated that, at the request of Visa, it would not reveal the name of the merchant.  After several emotionally stressful days of attempting to learn more information from Visa and from her credit union, Plaintiff Myck-Rawson was finally informed by her credit union that the local merchant was T.J. Maxx.

31.     Plaintiff Myck-Rawson was unable to conduct certain financial transactions or to obtain cash from ATM machines until she received a new debit card.

32.     Because Plaintiff Myck-Rawson also used her Visa credit card at Defendant's store, she has canceled that card and will receive a replacement.  This process has caused her further inconvenience.

33.     Plaintiff Rachel Rosenfeld shopped at Defendant's Marshalls Store in the latter part of 2006.  She used her Visa debit card to make purchases at this store.

34.     Plaintiff Rosenfeld was contacted by her credit union in a letter dated January 17, 2007 and informed that her Visa card number was at risk due to an unspecified "network intrusion that has put certain Visa accounts numbers at risk.  The reported incident involves confirmed unauthorized access to a merchant's transaction processing data-center, which exposed customer information that included Visa account numbers and expiration dates."  Plaintiff Rosenfeld was issued a new debit card, and her

old card was canceled as of January 31, 2007. Her credit union advised her that she should carefully review her accounts for unauthorized transactions. After making efforts on her own, she was finally later able to confirm with her credit union that the "intrusion" was at TJX.

35.     Plaintiff Jitka Parment shops frequently at Defendant's Marshalls, T.J. Maxx and HomeGoods stores, and specifically made purchases with her MasterCard there in May and June of 2006.

36.     In January, Plaintiff Parment was attempting to make a retail purchase when her MasterCard was rejected. Although she was able to make the purchase with a different card, the incident caused her great embarrassment.

37.     Plaintiff Parment was informed by her credit card company that several hundred dollars of online purchases had been made on her card, and, because she does not typically shop online, the card company had flagged her account. The company ultimately cancelled her account and issued her a new card. Plaintiff Parment is now in the (potentially lengthy) process of having to challenge these online purchases, which she did not make. These charges occurred in on December 18, 2006. TJX states that it discovered the intrusion into its computer system in "mid-December." It is possible that if Defendant had announced the theft immediately, Plaintiff Parment might have been able to cancel her card before these charges were incurred.

38.     Because Plaintiff Parment has used her MasterCard at Defendant's stores, and has no knowledge of any other likely way that her card information was otherwise compromised, she believes that her card information was stolen from Defendant.

39.     Plaintiff Parment separately received a letter from her credit union that her Visa debit card "may have been comprised in a recent nationwide breach of card information involving TJX Companies, Inc."   While no fraudulent charges had been made, the credit union issued her a new card and canceled her old card, which was an inconvenience to Plaintiff Parment.

40.     Plaintiffs have had to expend a great deal of time and effort as a result of the theft of their debit card information.  Plaintiffs are extremely concerned that their identities might be stolen as a result of their personal information having been stolen from Defendant.

## Class Action Allegations

41.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

42.     Plaintiffs bring this action both in their individual capacity, and as a class action against Defendant on behalf of a Class consisting of all individuals in the United States whose personal or financial data was stolen, or cannot definitively be determined not to have been stolen, from TJX as a result of the conduct described herein.  Excluded from the Class are any Judge or Special Master who had credit card or other personal information on file at TJX.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least a hundred thousand members in the proposed Class.

44.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the members of the Class have been damaged by the same wrongful conduct committed by Defendant, as alleged herein. Plaintiffs and all members of the Class had their personal or financial information stolen from Defendant in the same manner as alleged herein.

45.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in the prosecution of complex class action litigation. The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.   Whether Defendant took proper measures to safeguard the personal and financial data of Plaintiffs and the Class;

    b.   Whether Defendant notified Plaintiffs and the Class of the theft of their data in a sufficiently complete and timely manner;

    c.   Whether Defendant owed the legal duties discussed herein to Plaintiffs and the Class and whether Defendant breached these duties;

    d.   Whether Plaintiffs and the members of the Class have sustained damages and, if so, what is the proper measure of those damages; and

    e.   Whether Plaintiffs and the members of the Class are entitled to the relief sought, including injunctive relief and attorneys' fees.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## Count I: Negligence

48.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

49.     Defendant owed Plaintiffs and the Class a duty to protect their private personal and financial information and to promptly and completely disclose any theft of such information.

50.     Defendant failed to take adequate measures to safeguard this information, and, upon information and belief, specifically failed to follow standard industry rules and regulations governing the protection of this information.

51.     Given a number of recent similar high profile data thefts at other companies, TJX was clearly aware of the need to protect its customers' personal and financial information.

52.     Defendant failed to promptly and completely disclose the theft of this information, which would have allowed Plaintiffs and the Class to limit their damages.

53.     As a result of Defendant's breach of its duties, Plaintiffs and the Class have been harmed.

## Count II: Breach of Contract

54.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

55.     When providing personal and financial information to Defendant in order to transact business at Defendant's retail stores, Plaintiffs and the Class entered into implied contracts with Defendant that Defendant would safeguard this information and notify them promptly of any and all theft of this information.

56.     Without such implied contracts, customers (including Plaintiffs and the Class) would not have used their personal and financial information to transact business with Defendant.

57.     Additionally, upon information and belief, Plaintiffs and the Class are third party beneficiaries of contracts between Defendant and financial institutions that process credit and debit cards for Defendant.  These contracts require that Defendant safeguard the personal and financial information of Plaintiffs and the Class.

58.     Defendant breached these contracts, and, as a result of these breaches, Plaintiffs and the Class have been harmed as alleged herein.

## Count III: Bailment

59.     Plaintiffs reallege and incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

60.     Plaintiffs and the Class delivered and entrusted their personal and financial information to Defendant for the mutual benefit of facilitating the transaction of business at Defendant's stores.

61.     Implied in the terms of this bailment was that Defendant was only permitted to store this information for the amount of time necessary to complete any transactions made.  After this time, Defendant was obligated to destroy this information. However, upon information and belief, Defendant kept this information longer than necessary for this purpose.

62.     During the time of bailment, Defendant owed Plaintiffs and the Class a duty to properly safeguard this information and notify them promptly of any and all theft of this information.  Defendant breached this duty.

63.     As a result of these breaches of duty, Plaintiffs and the Class have been harmed as alleged herein.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that this Court:

A. Certify a Class as described herein under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives;

B. Order that Defendant compensate Plaintiffs and the Class for all damages suffered from the conduct alleged herein;

C. Order that Defendant create a fund to compensate Plaintiffs and the Class for future damages not yet suffered from the conduct alleged herein;

D. Grant injunctive relief, including the provision of identity theft monitoring services for Plaintiffs and the Class;

E. Award Plaintiffs and the Class their attorneys' fees, expenses, and costs;

F. Grant additional legal or equitable relief as this Court may find just and proper.

## Jury Demand

Plaintiffs demand a trial by jury for all claims so triable.

Dated: February 2, 2007           By their attorneys,

                                  _____

Thomas G. Shapiro, BBO #454680
Robert E. Ditzion, BBO # 660962
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

Lester L. Levy
Emily Madoff
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600